UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT LUMPKIN,

Plaintiff,

v.

MAIL ROOM CLERKS, et al.,

Defendants.

CASE NO. C17-1644 RAJ-BAT

**REPORT AND RECOMMENDATION**

On November 6, 2017, Plaintiff Robert Lumpkin filed a 42 U.S.C. § 1983 civil rights complaint against the Snohomish County Jail Mail Room Clerks, the Snohomish County Prosecuting Attorney, defense counsel Caroline Mann, and Snohomish County Jail Officers Yanes, Acheampong, Nicholas and Sigh. Dkts. 1, 8. Plaintiff subsequently filed a series of amended complaints withdrawing his claims against defense counsel, and alleging the Mail Room Clerks violated his right of access to the courts, the Prosecuting Attorney was maliciously prosecuting him, and the remaining defendants used excessive force against him.

On January 10, 2018, the Court dismissed the claims against the Mail Room Clerks, Prosecuting Attorney, and defense counsel, and directed that the claims against Jail Officers Yanes, Acheampong, Nicholas and Sigh for use of excessive force go forward. Dkt. 15. Plaintiff alleges the officer defendants used excessive force while handcuffing him at his cell

prior to transport to a new cell assignment. *See* Dkt. 11 (Second Amended Complaint). On May 31, 2018, defendants filed a motion for summary judgment along with supporting declarations. Dkts. 43, 44-52, 56. Plaintiff has filed a response, and defendants have replied. Dkts. 59, 62. The court recommends **GRANTING** defendant Nicholas' motion for summary judgement because it is undisputed he had no involvement in the handcuffing incident underlying plaintiff's claims. However, because there are disputed issues of material fact regarding the excessive force while handcuffing claims against defendants Sigh, Yanes and Acheampong, the Court recommends **DENYING** summary judgment as to those defendants.

## FACTS

Plaintiff is currently confined at the Clallam Bay Corrections Center. His claims arise from his confinement at the Snohomish County Jail. Dkt. 11. Plaintiff claims defendants used excessive force when handcuffing him for transport to a new cell. *Id*. The parties present two different versions of the material facts surrounding plaintiff's handcuffing.

### A. Plaintiff's Account of the Handcuffing Incident

Plaintiff states the jail staff asked him to pack his belongings as he was being moved from his cell to another cell. Before he had finished packing, officers returned to plaintiff's cell and requested he place his hands in the cell's cuff port for handcuffing. Dkt. 11 at 1; Dkt. 59 at 5.[1] Plaintiff contends he then walked backwards to the cuff port to comply with the request without resisting. Dkt. 59 at 5. Plaintiff asserts defendant Sigh placed the cuff on his left hand

[1] Defendants assert that plaintiff has not properly responded to their motion because he has not submitted "testimonial evidence." Dkt. 62 at 4-5. Plaintiff has certified that his summary judgment response is true and correct under penalty of perjury. Accordingly, the Court treats as evidence any factual assertions in the response that are within plaintiff's personal knowledge. *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). Such treatment is required when a plaintiff is proceeding *pro se*. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

excessively tightly. *Id*. When plaintiff complained of the tightness, he claims, "Officer Hector [Yanes], Officer Shari [Sigh], Officer Acheampong began pulling on [the] hand restraints and cuff tether through the cuff port." *Id*. Plaintiff asserts "they were trying to pull my hand through the cuff port," and that he received a cut and nerve damage to his left hand. *Id*. The parties agree that after the handcuffing incident, plaintiff was seen by medical personnel, who found a "superficial wound" described as a "small scabbed laceration" and, based upon plaintiff's reports of numbness, diagnosed a "temporary nerve injury" with "anticipate[d] self-resolution of [the] next several weeks." Dkt. 59 at 12. *See also* Dkt. 47 (Miller Dec.) at ¶¶ 3, 4. Plaintiff, however, asserts he "does not have feelings in his left hand." Dkt. 59 at 5.

**B. Defendants' Account of the Handcuffing Incident**

In support of the motion for summary judgment, defendants submitted declarations from each of the officers involved in the incident; the declarations provide a different explanation of the handcuffing incident and plaintiff's injuries. Dkts. 44 (Acheampong Dec.) 49 (Sigh Dec.), 52 (Yanes Dec.). Defendant Sigh states, after plaintiff was dilatory in packing his belongings for the move and became "ferocious and aggressive," she determined he needed to be handcuffed for the transfer. Dkt. 49, ¶6. She states she returned to plaintiff's cell front, together with defendants Yanes and Acheampong, and defendant Acheampong instructed plaintiff to turn around for handcuffing. Dkt. 49, ¶ 8. All the while, defendants claim, plaintiff was yelling threats and profanity. *Id*. After plaintiff put his hands through the cuff port, defendant Acheampong held plaintiff's left hand and defendant Yanes held the right hand. *Id.* Defendant Sigh states she placed the handcuff on plaintiff's left wrist and, as she attempted to cuff the right wrist, he pulled away. *Id*. Defendant Sigh states defendant Acheampong was able to maintain control of plaintiff's left wrist with the handcuff attached, and defendant Sigh also took hold of

the left hand; she and defendant Acheampong "pulled Mr. Lumpkin's wrist through the cuff port to convey we were not letting go." *Id*. Defendant Sigh states, notwithstanding plaintiff's statement that the handcuff contained a tether, they were not using a tether on that day. Dkt. 49, ¶ 9. She does not recall hearing plaintiff complain the handcuff was too tight. Dkt. 49, ¶10. The declarations of defendants Acheampong and Yanes echo defendant Sigh's testimony, except that defendant Achempong recalls it was plaintiff's right hand, not his left, that was handcuffed first. Dkts. 44, ¶6; 52, ¶4.

**C. Video Evidence**

Each side urges that its respective version of the facts is supported by video taken by jail security cameras during the incident. Dkt. 59 at 7; Dkt. 43 at 5. The Court has viewed the video, which contains footage from five cameras. Only one, Camera C-395 F 4, shows the activity in front of plaintiff's cell, but it is from a distance, is blurry even when zoomed to the maximum level that still shows the relevant activity, and is slightly obscured by a column. Another camera, C-225 F 4, pans the area but has moved past plaintiff's cell front at the crucial time (time stamp 19:51:49-51); a third camera, C-394 F4, has plaintiff's cell just outside its view. There is no sound on any of the camera feeds. The video from Camera C-395 F 4 shows three officers climb the stairs to the upper tier and gather at a cell front; they appear to be speaking and gesturing with the inmate at the cell front. Time stamp 19:51:25-53. They are joined by a fourth officer. Time stamp 19:51:12. At time stamp 19:51:41, the three officers at the cell front bend over, consistent with placing the handcuff on the first hand as explained in defendants' declarations. The fourth officer strolls a few cells down, turns around and leans against the wall. Time stamp 19:51:44-47. The video then shows the three officers at the cell front suddenly brace and struggle, and the fourth officer returns to their location. Time stamp 19:51: 49. The three

officers at the cell front are then pulled toward the cell. Time stamp 19:51:51. The fourth officer steps back at time stamp 19:51:54, and the remainder step back shortly thereafter, presumably after completing the handcuffing. Time stamp 19:51:55.

The Court finds that the video is inconclusive as to which version of events is accurate. The bracing shown on the video could equally be due to the officers pulling on plaintiff's hand (as plaintiff asserts), or (as defendants assert) to the defendants being pulled away by plaintiff. The video does not resolve the factual dispute between the parties.

**D. Involvement of Defendant Nicholas**

Both plaintiff and defendants have provided accounts that are in agreement that defendant Nicholas was not involved in the handcuffing incident. Plaintiff identifies only defendants Sigh, Yanes and Acheampong as participants in his handcuffing and the alleged pulling. Dkt. 59 at 5. This is consistent with defendant Nicholas' declaration (and that of his colleagues). Defendant Nicholas states he heard yelling coming from the F4 module, saw the officers walking up the stairs, and walked over to see what was happening. Dkt. 48, ¶ 3. He states he heard yelling and threats from plaintiff, and like his colleagues contends that plaintiff pulled his hand back into the cell after defendant Sigh had placed the first handcuff. Dkt. 48, ¶6. Defendant Nicholas states that he played no role in placing the handcuffs on plaintiff or in maintaining the hold on him after he pulled back. Dkt. 48, ¶ 7. Defendant Sigh agrees. Dkt. 49, ¶11. The video likewise shows that the fourth officer (who, according to the foregoing evidence, is likely defendant Nicholas) standing several cells away when the bracing and pulling at the cell front occurs. Dkt. 41-1 at timestamp 19:51:44-49.

## DISCUSSION

**A. Summary Judgment Standard**

Summary judgment should be granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden of proof at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the nonmovant lacks the quantum evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A mere scintilla of evidence

is insufficient to create a factual dispute. *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 255. However, if videotape evidence contradicts the version of events asserted by one party, "the court must "view[ ] the facts in the light depicted by the videotape. *Scott v. Harris* 550 U.S. 372, 380-81 (2007).

**B. Requirements of 42 U.S.C. § 1983 Claim**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a person acting under color of state law (2) deprived the plaintiff of a federal right. *Gomez v. City of Toledo*, 446 U.S. 635, 640 (1980). A third element of causation is implicit in the second element. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Plaintiff alleges defendants violated his constitutional rights by using excessive force. The governing standard depends upon whether plaintiff was a post-conviction prisoner or a pre-trial detainee, which is not clear from the record.

The Eighth Amendment governs post-conviction claims: the core inquiry under the Eighth Amendment standard is whether the force was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The extent of the injury suffered by the plaintiff is a relevant but not dispositive consideration. 503 U.S. at 7. While the Eighth Amendment does not reach *de*

*minimis* uses of physical force, a claim is not foreclosed merely because the resulting injury was only minimal. 503 U.S. at 9-10; *Wilkins v. Gaddy*, 599 U.S. 34, 38-39 (2010). In determining whether force is excessive, the court evaluates whether the defendants had a subjectively wanton state of mind when they engaged in the use of force, including considering the following factors: the need for the application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the defendants, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

If plaintiff was a pre-trial detainee, his claims are instead governed by the Fourteenth Amendment, which protects pretrial detainees from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates this standard. *Id.*, 490 U.S. at 396-397 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The use of force must be "objectively unreasonable." *Graham*, 490 U.S. at 397. Among the factors considered to determine whether force is excessive are: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper the amount of force; (4) the severity of the security problem at issue; (4) the threat reasonably perceived by the officer, and (5) whether the plaintiff was actively resisting. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015).

**C. Claims Against Defendants Sigh, Yanes and Acheampong**

Regardless of whether the Eighth or Fourteenth Amendment standard applies, the material conflict between the parties' versions of the facts precludes summary judgment for the defendants who participated in plaintiff's handcuffing. The Court cannot determine whether the legal requirements of excessive force are met without resolving the disputed issue of who was

pulled by whom. Plaintiff contends he was not resisting defendants' commands, but was forcefully pulled backward when he complained of the tightness of the handcuffs. Dkt. 59 at 5. Defendants assert plaintiff was combative and resistant and forcefully pulled his hand back into his cell with one handcuff attached, requiring them to pull back to ensure that plaintiff could not use the cuff as a weapon. Dkt. 49, ¶ 8; Dkt. 52, ¶4, Dkt. 44 ¶6. Each side cites the video of the event in support of its version of the facts. But the video is distant, blurred, and inconclusive; it cannot resolve the parties' factual dispute.

This dispute is material: it underlies most of the factors considered under both the Eighth and Fourteenth Amendment tests. The Court may not make credibility determinations or weigh conflicting evidence. *Anderson*, 477 U.S. at 255. Under the facts presented here, which must be considered in the light most favorable to the non-moving party, it cannot be said that a reasonable jury could not return a verdict against defendants Sigh, Yanes and Acheampong, who the parties agree were participants in the handcuffing.

**D. The Claim Against Defendant Nicholas**

Defendant Nicolas avers he was not involved in the handcuffing incident that underlies plaintiff's claims. A defendant is not liable in a § 1983 civil rights action if he did not personally participate in the alleged violation. *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 781 (9th Cir. 1997). A defendant personally participates if he "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Under this standard, the excessive force claim against defendant Nicholas should be dismissed. By plaintiff's own account, the only defendants who participated in the handcuffing

are defendants Sigh, Yanes and Acheampong. Dkt. 59 at 5. The video footage confirms this, and is consistent with the defendant Nicholas' account of his actions. Dkt. 41, Dkt. 48, ¶7.

Plaintiff's summary judgment response alleges additional conduct during the transport process—after the completion of the handcuffing that is the subject of his second amended complaint—which he contends constitutes the application of excessive force by defendant Nicholas. Dkt. 59 at 4. These assertions are not alleged in the second amended complaint. A party cannot defeat summary judgment by raising for the first time a theory or new set of facts that was not pled in his complaint. *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). A court need not address allegations raised for the first time in response to a motion for summary judgment if the plaintiff's "pleadings did not provide sufficient notice of those allegations." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006). *See also McNeely v. County of Sacramento*, 344 Fed.Appx. 317 at *319 (9th Cir. 2009) (prisoner bringing § 1983 action could not raise a claim for the first time as argument in opposition to summary judgment). The Court therefore does not consider the new allegations.

It is undisputed defendant Nicholas played no role in plaintiff's handcuffing, which is the sole ground for plaintiff's claims in the second amended complaint. The excessive force claim against defendant Nicholas should be dismissed.

**E.   Qualified Immunity Defense**

Defendants also contend that the Court should dismiss this action on the ground that they are entitled to qualified immunity. However, the factual issues discussed above also preclude summary judgment based upon qualified immunity.

Qualified immunity protects public officials from liability unless (1) defendants' conduct violated a constitutional right, and (2) that right was clearly established. *Saucier v. Katz*, 533

U.S. 194, 201 (2001). Excessively tight handcuffing can constitute an excessive use of force. *See, e.g.*, *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (affirming denial of qualified immunity where handcuffs were unnecessarily tight and defendants did not loosen them after plaintiff's complaint); *Ajala v. Tom*, 658 Fed.Appx. 805, 806-807 (7th Cir. 2016) (reversing qualified immunity dismissal because case law established that use of restraints to inflict pain on prisoners violated the Eighth Amendment). Plaintiff asserts he was not resisting while being handcuffed, that he complained the handcuffs were excessively tight, and that the defendants responded by forcefully pulling back on his hands, thereby injuring him. Dkt. 59 at 5. These facts, if true, would violate an established constitutional right and defeat defendants' claim to qualified immunity. Because the Court must draw all inferences in the light most favorable to the non-moving party, summary judgment on qualified immunity should be denied.

## CONCLUSION

The Court recommends defendant Nicholas' motion for summary judgment be **GRANTED** and that the claims against him be **dismissed without prejudice**. The Court recommends the motion for summary judgment by defendants Sigh, Yanes and Acheampong be **DENIED**.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 20, 2018.** The Clerk should note the matter for **August 24, 2018**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days

after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 6th day of August, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge