THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT J. LUMPKIN,

              Plaintiff,

    v.

HECTOR YANES, *et al.*,

             Defendants.

CASE NO. C17-1644-JCC

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

This matter was tried before the Court on July 1, 2019. (Dkt. No. 114.) Plaintiff brings a claim for excessive force under 42 U.S.C. § 1983.[1] Following a bench trial and pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

1. On November 14, 2017, Plaintiff Robert Lumpkin was incarcerated at the Snohomish County Jail.

2. Plaintiff testified that, on November 14, 2017, he was a pretrial detainee.

---

[1] In his trial brief, Plaintiff mentioned claims for assault and battery under Washington law. (Dkt. No. 83 at 6.) Defendants disputed whether Plaintiff should be able to bring the claims because they were not pled in his complaint. (Dkt. No. 106 at 1 n.1.) Plaintiff did not raise these claims at trial and never moved to amend his complaint to add the claims. (*See* Dkt. No. 114.) Therefore, the Court concludes that the state law claims of assault and battery are not properly before it.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW
C17-1644-JCC
PAGE - 1

3. Defendants submitted a declaration indicating that Plaintiff was incarcerated on November 14, 2017 due to a community custody violation, arising out of a previous conviction.
4. On November 14, 2017, Defendant Snohomish County Jail Corrections Deputy Shari Sigh was tasked with transporting Plaintiff to a maximum security module because Plaintiff had threatened to kill his cellmate. Defendant Sigh went to Plaintiff's cell and directed him to pack his belongings.
5. Plaintiff was dilatory in packing his belongings and became aggressive with Defendant Sigh.
6. Plaintiff is 6'5" tall, and Defendant Sigh is 5'2" tall.
7. Defendant Sigh left Plaintiff's cell to go talk to Defendant Corrections Deputies Hector Yanes and Boakye Acheampong about Plaintiff's behavior and how they should handle the situation.
8. Defendants determined that Plaintiff needed to be handcuffed for the transport.
9. Defendants went to Plaintiff's cell door and instructed him to turn around and place his hands through the cell door's cuff port so that Plaintiff could be handcuffed for transport.
10. Plaintiff placed his hands behind his back and through the cuff port.
11. After Plaintiff put his hands through the cuff port, Defendant Yanes held Plaintiff's right hand and Defendant Acheampong held Plaintiff's left hand, while Defendant Sigh began to handcuff Plaintiff.
12. Defendant Sigh first handcuffed Plaintiff's left wrist.
13. Before Defendant Sigh could handcuff Plaintiff's right wrist, Plaintiff suddenly pulled away from the cuff port.
14. Defendant Yanes lost control of Plaintiff's right wrist.
15. Defendants Sigh and Acheampong pulled on Plaintiff's left wrist in order to maintain

their control of him.

16. Defendants exerted enough force to prevent Plaintiff from gaining possession of the handcuffs.
17. Defendants believed, based on their training and experience, that if Plaintiff gained possession of the handcuffs, Plaintiff could use them as a weapon.
18. Defendants told Plaintiff to stop resisting.
19. After a few seconds, Plaintiff stopped resisting and placed both hands back through the cuff port.
20. Defendant Sigh placed the right handcuff on Plaintiff's right wrist.
21. Defendants removed Plaintiff from his cell and transported him to the sally port. During the transport, Plaintiff continued to act aggressively with Defendants.
22. Once in the sally port, Plaintiff continued acting aggressively with Defendants. In order to efficiently manage Plaintiff, Defendants brought him from a standing position to a position on the ground.
23. Once Plaintiff was on the ground, other jail corrections deputies brought leg restraints and put Plaintiff in those restraints.
24. As a result of this incident, Plaintiff suffered superficial lacerations on his wrist and hand, as well as temporary nerve damage to his wrist and hand.

## II. CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.
2. Venue is properly set in the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1391.
3. In order to state a § 1983 claim, a plaintiff must prove, by a preponderance of the evidence, that: (1) a person acting under color of state law (2) deprived the plaintiff of a federal right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Plaintiff alleges that Defendants violated his constitutional right to be free from the use of excessive force

under either the Eighth Amendment or the Fourteenth Amendment. Defendants acted under color of state law during the incident because they were acting for the state as corrections officers. However, Plaintiff has failed to prove by a preponderance of the evidence that Defendants deprived him of any federal right.

4. Plaintiff has failed to prove, by a preponderance of the evidence, that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. The core inquiry under the Eighth Amendment standard is whether the force was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The extent of the injury suffered by the plaintiff is a relevant, but not dispositive, consideration. *Id.* at 7. In determining whether force is excessive under the Eighth Amendment, the Court evaluates whether a defendant had a subjectively wanton state of mind when he engaged in the use of force. *Id.* To evaluate such, the Court considers the following factors: (1) the need to use force; (2) the relationship between the need to use force and the amount of force used; (3) any threat reasonably perceived by the defendant; and (4) any efforts made to temper the severity of a forceful response. *Id.*

5. The extent of the injury Plaintiff suffered was minimal—he suffered small, superficial lacerations on his hand and wrist, and temporary nerve damage. Defendants needed to use force when Plaintiff forcefully pulled away from the cuff port in order to restore control and prevent Plaintiff from using the handcuffs as a weapon. Likewise, Defendants needed to use force by bringing Plaintiff down to the ground in the sally port in order to maintain control over him while he continued to be aggressive. Defendants applied a reasonable degree of force in order to maintain control over Plaintiff because, with regard to the handcuffing incident, it was the only way Defendants could have prevented Plaintiff from retaining control of the handcuffs even temporarily. With regard to the sally port, bringing Plaintiff from a standing

position to a position on the ground was a reasonable degree of force in order to maintain control over Plaintiff because Plaintiff was aggressive and non-compliant while remaining upright, and was taller than Defendants. Defendants perceived a threat when Plaintiff pulled away from the cuff port because, based on their training and experience, they feared that Plaintiff could use the handcuffs as a weapon. And Defendants perceived a threat from Plaintiff in the sally port because he would not stop being aggressive, even during the transport from his cell to the sally port. Defendants attempted to temper the severity of their forceful response by telling Plaintiff to stop resisting.

6. Under the Eighth Amendment, Defendants did not use excessive or unnecessary force. Defendants did not act maliciously or sadistically for the purpose of causing harm; rather, Defendants acted in a good faith effort to restore discipline after Plaintiff pulled away from the cuff port and after Plaintiff acted aggressively during his transport from his cell to the sally port.

7. Plaintiff has failed to prove, by a preponderance of the evidence, that Defendants violated his Fourteenth Amendment right to due process. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates this standard. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d. Cir. 1973)). The use of force must be "objectively unreasonable." *Id.* at 397. When determining whether the use of force was objectively unreasonable, courts consider the following non-exhaustive factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (5) whether the plaintiff was actively resisting. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015).

8. Defendants' pulling on the handcuffs was a reasonable amount of force to use in order to regain control over Plaintiff considering the parties' location and Defendants' inability to use other methods of control at that time. Likewise, moving Plaintiff from a standing position to a position on the ground was a reasonable amount of force to use in order to gain control over Plaintiff who continued to be aggressive during his transport from the cell to the sally port and who was taller than Defendants. Plaintiff's injury to his wrist and hand was minimal—he suffered minor lacerations and temporary nerve damage. Defendants attempted to temper the amount of force used on Plaintiff by telling him to stop resisting. The severity of the security problem appears to have been moderate—Plaintiff was either in his cell or in the sally port and did not pose a danger to other inmates; however, Defendants believed, based on their experience, that Plaintiff could use the handcuffs as a weapon, if he was able to gain control over them. Therefore, the threat reasonably perceived by the officers was high. Finally, Plaintiff was actively resisting.

9. Under the Fourteenth Amendment, Defendants did not use excessive or unnecessary force. Defendants use of force was not objectively unreasonable under the circumstances.

10. Whether Plaintiff was a pretrial detainee subject to the Fourteenth Amendment or a post-conviction prisoner subject to the Eighth Amendment, Defendants did not use excessive or unnecessary force under the circumstances. As a result, Defendants' use of force did not violate Plaintiff's Eighth or Fourteenth Amendment constitutional rights.

11. Defendants are entitled to qualified immunity. Qualified immunity protects public officials from liability unless (1) the public official's conduct violated a constitutional right; and (2) that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Because the Court finds that Defendants' conduct did not violate Plaintiff's

constitutional rights, Defendants are entitled to qualified immunity.

Accordingly, the Court finds in favor of Defendants.

DATED this 11th day of July 2019.

_John C. Coughenour_
John C. Coughenour
UNITED STATES DISTRICT JUDGE